WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Samuel Lopez-Ozuna,<br><br>        Defendant. | No.       CR-24-06035-001-TUC-AMM (EJM)<br><br>**ORDER** |

On April 18, 2025, Magistrate Judge Eric J. Markovich issued a Report and Recommendation ("R&R") recommending that the Court find Defendant Samuel Lopez-Ozuna competent to stand trial. (Doc. 121.) On May 15, 2025, Defendant filed written objections. (Doc. 138.) Defense counsel also filed an affidavit supporting the objections. (Doc. 134.) The Government responded on May 22, 2025.[1] (Doc. 140.)

Upon de novo review, the Court finds that Defendant is competent.

**I.     Standard of Review**

The standard of review applied to a magistrate judge's report and recommendation depends on whether a party files objections. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). A district court need not review "a magistrate's factual or legal conclusions, under

---

[1] On May 23, 2025, Defendant filed a Motion for Leave to File Reply to Defendant's Objection to Report & Recommendation. (Doc. 141.) Defendant simultaneously filed the requested reply without a ruling on his motion. (Doc. 142.) The Court will deny the motion and strike the impermissible reply. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 59(b)(2).

a *de novo* or any other standard, when neither party objects to those findings." *Id.* at 150.

If, however, a party objects, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). Although the district court is not required to review an issue de novo absent a proper objection, the statute "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

## II.     Uncontested Factual Background

Because neither party objects to the Magistrate Judge's thorough narration of the facts in this matter, the Court will incorporate by reference the facts as articulated by the Magistrate Judge. (Doc. 121 at 1–72.)

## III.    Report and Recommendation

The Magistrate Judge concluded that Defendant is competent to stand trial under the two-prong test articulated in *Dusky v. United States*, 362 U.S. 402, 402–03 (1960). (*Id.* at 95.) The Magistrate Judge highlighted that "competency to stand trial is a 'low bar[.]'" (*Id.* at 76.)

First, the Magistrate Judge determined that, although Defendant's descriptions were "simplistic," he demonstrated a rational and factual understanding of the proceedings, constitutional rights, legal concepts, and key players in the courtroom. (*Id.* at 76–88.) The Magistrate Judge emphasized that the Due Process Clause does not require defendants to have advanced or nuanced understandings of legal concepts. (*Id.* at 75–76.)

Second, the Magistrate Judge concluded that Defendant "is able to rationally assist his attorney[s] and help prepare his defense based on his understanding of the legal proceedings and the key players, his ability to describe in detail the events that led to the offenses, and his ability to cooperate with questioning and communicate in a logical and reasonable manner." (*Id.* at 93.) The Magistrate Judge also relied on the fact that Defendant

|   |   |
|---|---|
| 1 | knows the charges against him are serious, understands that he could face life in prison, |
| 2 | and recognizes that he may not want to testify. (*Id.* at 93–94.) |

       The Magistrate Judge further emphasized that Defendant appears to trust his attorneys and that he recognizes their "job is to help him." (*Id.*) He described the "good rapport" between defense counsel and Defendant, as well as Defendant's "willingness to follow their advice." (*Id.*) The Magistrate Judge also highlighted Defendant's ability to behave appropriately in the courtroom. (*Id.* at 94.)

       The Magistrate Judge reasoned that there is "little correlation" between the neuropsychological tests that Dr. Weller performed and Defendant's ability to assist defense counsel, and "a person like Lopez-Ozuna who has borderline intellectual function is generally able to work with their attorney." (*Id.* at 88–89.) The Magistrate Judge hypothesized that Defendant may have responded "I don't know" to Dr. Weller in their subsequent sessions because he realized that she would not probe further if he responded in that manner, and he may have been motivated to do so given his fatigue. (*Id.* at 89–90.) The Magistrate Judge emphasized that Dr. Johnson did not report any "I don't know" responses from Defendant during their 90-minute session. (*Id.* at 90.) He therefore reasoned that Defendant may have been "feigning or exaggerating" some of the memory issues with Dr. Weller because Defendant did not struggle in the same way with Dr. Johnson.[2] (*Id.*)

       The Magistrate Judge then addressed defense counsel's argument that their doubts about Defendant's competency should carry considerable weight. (*Id.*) Relying on *Marks v. Davis*, 106 F.4th 941, 971 (9th Cir. 2024), the Magistrate Judge highlighted that defense counsel had not yet provided specific or detailed facts nor the "testimony and declaration in *Marks*" explaining the factual basis for their concerns. (*Id.* at 91.) At the competency hearing, the Magistrate Judge specifically asked defense counsel to articulate the bases for their concerns, and defense counsel failed to do so, citing attorney-client privilege. (*Id.* at 92.) The only example defense counsel provided to the Magistrate Judge was that

---

[2] Notwithstanding these observations, this Court notes that neither Dr. Weller nor Dr. Johnson found any evidence of malingering. (Doc. 78 at 5; Doc. 101 at 5–6; Doc. 113 at 156–57, 159.)

1  Defendant spoke with Dr. Johnson about the facts of the case after he had been instructed
2  not to do so with anyone. (*Id.*) The Magistrate Judge did not find this fact persuasive . (*Id.*
3  at 92–93.)

### IV. Defendant's Objections

Defendant does not object to the Magistrate Judge's finding that he has a sufficient understanding of legal concepts and the proceedings. (Doc. 138 at 7.) Instead, Defendant objects to the Magistrate Judge's finding that he is able to assist in preparing his defense. (*Id.*)

First, Defendant argues that Dr. Johnson's 90-minute forensic interview was superficial, and his evaluation "deficient," because Dr. Johnson did not conduct any testing or review educational or medical records. (*Id.* at 7–8.) Defendant stresses that Dr. Johnson did not specifically witness or probe into his fatigue or mental stamina because their meeting was so brief. (*Id.* at 11.) He argues that the Magistrate Judge over critiqued Dr. Weller's evaluation for inflating the competency standard instead of critiquing Dr. Johnson's evaluation for its deficiencies. (*Id.* at 10–11.)

Next, Defendant argues that the Magistrate Judge erred in finding that his "agreeability" and understanding of legal concepts evince his ability to assist his attorneys. (*Id.* at 8–10.) Defendant asserts through counsel that his "agreeability is evidence that he fails to understand and/or question what is happening in his case . . . ." (*Id.* at 9.) Defendant further claims that he cannot remember facts or stay awake through proceedings. (*Id.*) For example, Defendant fell asleep twice during the competency hearing before the Magistrate Judge. (*Id.* at 10 n. 2.)

Relatedly, Defendant asserts that the Magistrate Judge erred in not deferring to his attorneys' opinion that Defendant is not competent. (*Id.* at 12–14.) After the Magistrate Judge issued his recommendation, defense counsel filed an affidavit averring that while Defendant is "cooperative and friendly, he is unable to engage with his legal team, has a pronounced flat affect, blunted demeanor, glazed eyes, and lack of engagement." (Doc. 134 at 1.) They note that he "tires extremely easily, no matter how much sleep he has had.

1  After 30 to 40 minutes, [Defendant] is unable to engage even in a very limited capacity."
2  (*Id.* at 2.) They also describe how Defendant's memory is "severely impaired." (*Id.*)
3  According to his counsel, Defendant "appears to have forgotten biographical and case-
4  related events. He also continues to forget previous legal discussions with his attorneys.
5  [Defendant] has also forgotten case events that he previously remembered which [counsel]
6  believe is indicative of deteriorating memory." (*Id.* at 2–3.) The affidavit reiterates that
7  Defendant fell asleep during the competency hearing and advises that, six weeks later, he
8  could not remember the details of the hearing, only that he was present. (*Id.* at 3; Doc. 138
9  at 12–13.)

10  Defendant argues that Dr. Weller's observations are consistent with those of his
11  attorneys, and the Magistrate Judge erred in undervaluing Dr. Weller's evaluation. (Doc.
12  138 at 14–19.) Dr. Weller concluded that Defendant has neurodevelopmental disorders that
13  interfere with his cognitive and intellectual functioning including Attention Deficit
14  Hyperactivity Disorder ("ADHD"), "borderline range for working memory," and
15  "borderline range for verbal comprehension." (*Id.* at 15, 17.) Defendant argues that this
16  severely impacts his ability to understand verbal communications from his attorneys,
17  express thoughts verbally to his attorneys, and generally remember events in the case. (*Id.*)
18  Dr. Weller's evaluation also concluded that Defendant lacks the stamina to engage for
19  longer periods of time, which he asserts fundamentally impacts his ability to participate in
20  his defense. (*Id.*)

21  For these reasons, Defendant objects to the Magistrate Judge's finding that he is
22  competent to stand trial. (*Id.* at 19.) He specifies that, at this stage, he is not seeking to
23  dismiss the indictment but only to be referred for attempted restoration. (*Id.*)

24  **V.    Discussion**

25  Upon de novo review, the Court has carefully considered the Magistrate Judge's
26  R&R, Defendant's written objections, the Government's response, defense counsel's
27  affidavit, and the experts' evaluations and testimony before the Magistrate Judge. The
28  Court finds that the Government has shown by a preponderance of the evidence that

1 Defendant is competent because he has a rational understanding of the proceedings and
2 relevant legal concepts and is reasonably able to assist counsel in his defense.

3 As the Magistrate Judge emphasized, the standard for mental competency is
4 minimal. Dr. Johnson applied the correct standard to determine competency, and his
5 evaluation was sufficient for this purpose. Although Defendant argues that Dr. Johnson
6 failed to observe his fatigue or memory, Dr. Johnson noted that Defendant's "concentration
7 was at least fair" though he had "occasional difficulty with his memory." (Doc. 78 at 4.)
8 Significantly, Dr. Johnson did not probe deeper into Defendant's alleged fatigue or lack of
9 mental stamina because, in his professional opinion, he saw no reason to be concerned that
10 Defendant could not engage or remember information to such an extent that it would render
11 Defendant incompetent. Dr. Johnson observed that Defendant is reasonably capable of
12 communicating with his attorneys and recited detailed facts about his case during their
13 evaluation. These conclusions sufficiently support a finding that Defendant is competent.

14 The Court agrees with the Magistrate Judge that Dr. Weller applied too stringent a
15 standard when she concluded that Defendant's neurodevelopmental disorders render him
16 incompetent. While both experts essentially agree as to Defendant's diagnoses, Dr. Weller
17 nevertheless concludes that Defendant cannot understand verbal communications from his
18 attorneys, express thoughts verbally to his attorneys, or generally remember events in the
19 case. The Court agrees with the Magistrate Judge that Dr. Weller's conclusions are not
20 sufficiently linked to the evidence in this case and are unsupported by the record as a whole.

21 In accordance with *Marks*, the Court also carefully considered defense counsel's
22 affidavit. The affidavit was filed to supplement Defendant's objections. The Court weighed
23 defense counsel's allegations that Defendant "tires extremely easily," is "unable to engage
24 even in a very limited capacity" after approximately 30 minutes, has a "severely impaired"
25 memory, as well as their assertion that Defendant "appears vulnerable and unable to adjust
26 to or comport himself in a custodial setting." (Doc. 134 at 2.) Notably, however, defense
27 counsel's affidavit fails to state sufficient factual allegations to support these broad
28

conclusions.[3] Because the affidavit is conclusory, the Court finds it is insufficient to support a finding that Defendant is unable to assist his counsel in his defense.

As a collateral matter, because defense counsel raised serious allegations that Defendant was medically and/or mentally "deteriorating" (*Id*. at 3) while in custody, the Court requested and received a welfare check regarding Defendant from CoreCivic. The Court was advised that Defendant was last seen by a doctor on June 10, 2025, and that he is not under any medical or mental health monitoring, displays no mental or physical impediments, displays no unusual fatigue, engages socially, and has maintained a job at the facility working approximately four hours a day since March 2025. The parties were advised of this welfare check at the June 26, 2025 hearing. In response, defense counsel informed the Court that counsel was aware that their client is working while at CoreCivic but that counsel may not have known that at the time they filed their affidavit. Regardless, upon learning this additional information as to their client's status, defense counsel failed to alert the Court and/or supplement their affidavit.

Following the hearing, the Court took under advisement defense counsel's request for an evidentiary hearing to permit Defendant to examine witnesses from CoreCivic to fully assess the veracity of their observations. Having considered the request, the Court finds that an evidentiary hearing is not necessary. The Court does not rely on the information from CoreCivic in reaching its conclusion that Defendant is competent.[4] In reaching this conclusion, the Court relies solely on the Magistrate Judge's R&R, Defendant's written objections, the Government's response, defense counsel's affidavit, and the experts' evaluations and testimony before the Magistrate Judge.

---

[3] Indeed, on June 26, 2025, the Court held a hearing on this matter and pressed defense counsel to articulate the specific factual bases for the avowals contained in their affidavit. Defense counsel could not identify any facts. On three separate occasions, defense counsel has had the opportunity to provide sufficient facts to support their opinion that Defendant is not reasonably able to assist in his defense. They have not done so.

[4] The Court requested the welfare check to ensure Defendant was not in need of immediate medical/mental health intervention based on defense counsel's affidavit. While the welfare check certainly undermines defense counsel's avowal to the Court that their client is "vulnerable and unable to adjust to or comport himself in a custodial setting," (Doc. 134 at 2), it is not relied upon by the Court in reaching its finding that Defendant is competent to stand trial.

**VI.   Conclusion**

For the foregoing reasons, the Court will overrule Defendant's objections and adopt the R&R.

Accordingly,

**IT IS ORDERED:**

(1) Defendant's Motion for Leave to File Defendant's Reply is **DENIED**. (Doc. 141.) The Clerk of Court shall **STRIKE** from the record the reply filed at Doc. 142.

(2) Magistrate Judge Markovich's R&R is **ADOPTED**. (Doc. 121.)

(3) Material Witness Wendolyn Laguna's Motion for Hearing Regarding Continued Detention of Material Witness is **DENIED**. (Doc. 143.) Material Witness Antonia Gonzalez-Robledo's Motion Requesting Being Present at Status Hearing Requested by Material Witness Wendolyn Laguna is **DENIED AS MOOT**. (Doc. 144.) Motion Requesting Being Present at Status Hearing Requested by Material Witness Wendolyn Laguna is **DENIED AS MOOT**. (Doc. 146.) The Government has indicated that it will hold video depositions of the material witnesses beginning July 7, 2025.

**Dated this 26th day of June, 2025.**

Honorable Angela M. Martinez
United States District Judge