TIMOTHY COURCHAINE
United States Attorney
District of Arizona
RYAN P. DEJOE
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: ryan.dejoe@usdoj.gov
Attorneys for Plaintiff

☒ FILED  ☐ LODGED

**Jul 07 2025**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 24-06035-TUC-AMM (EJM) |
| Plaintiff, | |
| vs. | PLEA AGREEMENT |
| Samuel Lopez-Ozuna, | |
| Defendant. | |

The United States of America and the defendant agree to the following disposition of this matter:

*APD SL*

**PLEA**

*[handwritten: to all Counts 1-8]*

The defendant agrees to plead guilty to the Indictment charging the defendant with a violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(iv), Conspiracy to Transport Illegal Aliens for Profit Placing in Jeopardy the Life of Any Person Resulting in Death, Transportation of Illegal Aliens for Profit Resulting in Death, and Transportation of Illegal Aliens for Profit Placing in Jeopardy the Life of Any Person Resulting in Death, all felony offenses.

**ELEMENTS OF THE OFFENSE AND SENTENCING FACTOR**

**Conspiracy to Transport Illegal Aliens for Profit Placing in Jeopardy the Life of Any Person Resulting in Death**

1. There was an agreement between two or more persons to commit the offense of transporting illegal aliens in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), that is, there was an agreement that all or some of the co-conspirators, knowing or in reckless disregard of the fact that aliens had come to, entered, or remained in the United States in violation of law, would knowingly transport such aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law.

2. The defendant became a member of the conspiracy knowing that the object of the conspiracy was the transportation of illegal aliens and the defendant intended to accomplish said object for the purpose of private financial gain or commercial advantage and during and in relation to the offense, the defendant caused serious bodily injury to, or placed in jeopardy the life of, any person.

3. The defendant's conduct was the proximate cause of the charged death.

**Transportation of Illegal Aliens for Profit Placing in Jeopardy the Life of Any Person Resulting in Death**

1. The defendant knew or was in reckless disregard of the fact that certain aliens had come to, entered, or remained in the United States in violation of law.

2. The defendant knowingly transported or moved such aliens within the United States by means of transportation or otherwise in order to help such aliens remain in the United States illegally.

3. The defendant committed the offense for the purpose of commercial advantage or private financial gain and during and in relation to the offense, the defendant caused serious bodily injury to, or placed in jeopardy the life of, any person.

4. The defendant's conduct was the proximate cause of the charged death.

**Transportation of Illegal Aliens for Profit Placing in Jeopardy the Life of Any Person Resulting in Death**

1. The defendant knew or was in reckless disregard of the fact that certain aliens had come to, entered, or remained in the United States in violation of law.

    2. The defendant knowingly transported or moved such aliens within the United States by means of transportation or otherwise in order to help such aliens remain in the United States illegally.

    3. The defendant committed the offense for the purpose of commercial advantage or private financial gain and during and in relation to the offense, the defendant caused serious bodily injury to, or placed in jeopardy the life of, any person.

## **STIPULATIONS, TERMS AND AGREEMENTS**

### **Maximum Penalties**

A violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(iv) is punishable by a maximum fine of $250,000.00, or a maximum term of life imprisonment, or both, plus a term of supervised release of five years and a special assessment of $100; the special assessment is due and payable at the time the defendant enters the plea of guilty, and must be paid by the time of sentencing unless the defendant is indigent. If the defendant is indigent, the special assessment will be collected according to Title 18, United States Code, Chapters 227 and 229.

The defendant will pay upon conviction an additional $5,000 special assessment pursuant to 18 U.S.C. § 3014(a), unless the Court determines that the defendant is indigent.

### **Agreements Regarding Sentence**

    1.   <u>Guideline Calculations</u>: The parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence.

    2.   <u>Sentencing Range</u>: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant stipulate and agree that the defendant will be sentenced to between 120 and 360 months imprisonment. The Court can vary from the advisory guidelines pursuant to 18 U.S.C. § 3553(a) to sentence the defendant between 120 and 360 months imprisonment. *Any sentence on each count is to run concurrently.*

SLD               RPD 

3. The defendant may withdraw from the plea agreement if he receives a sentence that exceeds 360 months imprisonment. The government may withdraw from the plea agreement if the defendant receives a sentence below 120 months imprisonment.

4. If the defendant moves for any adjustments in Chapters Two, Three or Four of the Sentencing Guidelines, any "departures" from the Sentencing Guidelines, or a variance under 18 U.S.C. § 3553(a) below 120 months imprisonment, the government may withdraw from this agreement.

5. The parties agree that the defendant was an average participant in the offense for the purpose of role analysis under U.S.S.G. §§ 3B1.1 and 3B1.2.

6. If the Court, after reviewing this plea agreement, concludes any provision is inappropriate under Fed. R. Crim. P. 11(c)(5), it may reject the plea agreement, giving the defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw the defendant's guilty plea.

7. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences may be the subject of a separate judicial or administrative proceeding, and the defendant has discussed the direct and collateral implications this plea agreement may have with his defense attorney. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

## RESTITUTION

The defendant understands that the Court has an obligation to determine whether, and in what amount, restitution applies in this case under 18 U.S.C. § 3663 and 18 U.S.C. § 3663A. The defendant agrees this may include restitution for all losses caused by the defendant's criminal conduct, even if such losses resulted from related federal crimes not charged or admitted by the defendant in the Factual Basis. The defendant waives any

defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. Additionally, the defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement. The defendant also agrees that he will waive his right to appeal any order of the district court relating to restitution as long as the restitution amount ordered is not greater than the amount specified as the exact amount or the maximum amount in this plea agreement.

The defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties or restitution are imposed by the Court will be due immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, Defendant agrees that it is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset (which will not affect any periodic payment schedule). If incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program pursuant to a payment schedule to be determined by the Court.

### Disclosure of Financial Information

The defendant agrees fully to disclose all assets, including real and personal property, in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The defendant agrees to truthfully complete the financial statement disclosed provided herein by the earlier of 14 days from the defendant's signature on this

plea agreement or the date of the defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to the United States Attorney's Office. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. The defendant shall not (and shall not aid nor abet any other party to) sell, hide, waste, destroy, transfer, or otherwise devalue any such assets or property before sentencing, without prior approval of the United States (provided, however, that no prior approval will be required for routine day-to-day expenditures). After sentencing, the defendant shall, if requested, submit to an interview, commonly referred to as a debtor's examination, in which the defendant will fully and truthfully answer all questions regarding the defendant's past and present financial condition.

The defendant expressly authorizes the U.S. Attorney's Office to obtain the defendant's credit report. The defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days from the date of sentencing the defendant shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation. Said disclosure shall include the financial condition of all household members, including but not limited to that of a spouse and/or any children. The defendant also authorizes the U.S. Attorney's Office, including the Financial Litigation Program, to inspect and copy all financial documents and information held by the U.S. Probation Office. The defendant shall fully cooperate with the government and the probation officer to execute such documentation as necessary to secure assets to be applied to restitution owed by the defendant.

The defendant's failure to timely and accurately complete and sign the financial statement, and any update thereto, and/or failure to comply with any of the financial information disclosure provisions, may, in addition to any other penalty or remedy (such as a charge of perjury or a violation of this plea agreement), constitute the defendant's

failure to accept responsibility under U.S.S.G §3E1.1.

### Transfer of Assets

Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before the defendant transfers any interest in property with a value exceeding $1,000.00 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.

### Forfeiture

Nothing in this plea agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

### Plea Addendum

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contained all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

### Waiver of Defenses and Appeal Rights

Provided the defendant receives a sentence not to exceed 360 months' imprisonment, the defendant waives any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the information or indictment, or to the petition to revoke, or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant providing the sentence is consistent with this agreement. The sentence is in accordance with this agreement if the sentence imposed is within the stipulated range or below the stipulated range if the Court grants a variance. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon

defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion); and (6) any right to appeal the competency finding by United States District Judge Angela M. Martinez. The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

### Reinstitution of Prosecution

Nothing in this agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by the defendant after the date of this agreement. In addition, if the defendant commits any criminal offense between the date of this agreement and the date of sentencing, the government will have the right to withdraw from this agreement. Any information, statements, documents and evidence which the defendant provides to the United States pursuant to this agreement may be used against the defendant in all such proceedings.

If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the defendant waives

any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings. Defendant agrees that the stipulated sentencing ranges set forth under "Agreements Regarding Sentence" will not be offered if prosecution is re-instituted.

### Disclosure of Information to U.S. Probation Office

The defendant understands the government's obligation to provide all information in its file regarding defendant to the United States Probation Office. The defendant fully understands and agrees to cooperate fully with the United States Probation Office in providing all information requested by the probation officer.

### Effect on Other Proceedings

I further understand that if I violate any of the conditions of my supervised release, my supervised release may be revoked. Upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

### WAIVER OF DEFENDANT'S RIGHTS

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witnesses against myself by asserting my privilege against self-incrimination; all with the assistance of counsel, to be presumed innocent until proven guilty beyond a reasonable doubt, and to appeal. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct."

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence.

My guilty plea is not the result of force, threats, assurance or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions. I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

## **FACTUAL BASIS AND SENTENCING FACTOR**

I agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove these facts beyond a reasonable doubt:

> From a time unknown until on or about August 9, 2024, at or near Arivaca, in the District of Arizona, SAMUEL LOPEZ-OZUNA did knowingly and intentionally combine, conspire, confederate, and agree with and various persons known and unknown, to transport illegal aliens.
>
> Samuel LOPEZ-OZUNA was driving a Chevrolet Tahoe near Arivaca, Arizona and areas south. LOPEZ-OZUNA was in communication with individuals who directed him to the location where seven individuals, including A. R.-V., were picked up. LOPEZ-OZUNA knew that all seven individuals that he was picking up were illegally present in the United States. LOPEZ-OZUNA agreed to participate in picking up and driving illegal aliens in order to help them remain in the United States illegally and expected to be paid to do so.
>
> Border Patrol Agents began to follow LOPEZ-OZUNA and they attempted to conduct a vehicle stop by engaging their lights and sirens. LOPEZ-OZUNA did not yield but rather accelerated, causing the vehicle to roll over on the side on Ruby Road, flipping the vehicle multiple times before it came to stop on its side. One of the seven illegal aliens, A. R.-V., died a result of

the crash and others sustained serious injuries. LOPEZ-OZUNA's failure to yield and acceleration that caused vehicle to flip mulitple times was the proximate cause of death of the A. R.-V.

I have read this agreement or it has been read to me, and I have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it.

Date: July 7th

Samuel Lopez-Ozuna
Defendant

**DEFENSE ATTORNEY'S APPROVAL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

Date: 7/7/2025

Leo Masursky
Attorney for Defendant

- 11 -

**GOVERNMENT'S APPROVAL**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

Date: 7/7/25

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*[signature]*

RYAN P. DEJOE
Assistant U.S. Attorney